AUGUSTINO TOSTI *vs.* HENRY AYIK & another.[1]

Middlesex.  December 5, 1986. — June 10, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Libel and Slander. Damages,* Libel, Remittitur, Back pay, Mitigation, Emotional distress.

A plaintiff whose employment had been terminated as the result of the publication of libelous statements concerning him in a union newspaper was required to make a good faith effort to mitigate his damages by seeking comparable employment, but once that effort was made, he was entitled to be compensated in an amount that reflected what he would have earned had his employment not been terminated. [227-228]

In an action arising from the publication of alleged libelous statements in a union newspaper concerning the plaintiff, a foreman in an automobile manufacturing plant whose employment had been terminated as a result of the statements, an award of $703,187.17, including interest, against the union was not clearly excessive where adequate evidence warranted

---

[1] United Auto Workers, Local 422. When this action was originally commenced by the plaintiff, an unincorporated voluntary association such as a labor union could not be sued in its own right. *Tosti* v. *Ayik,* 394 Mass. 482, 484 n.4 (1985) (*Tosti II*), citing *Members of Bakery & Confectionery Workers Int'l Union, Local 458* v. *Hall Baking Co.,* 320 Mass. 286 (1946). Consequently, the action was brought against several representative officers and members of the union, as well as two members as individuals. *Tosti II, supra* at 484. Before the retrial of this action mandated by *Tosti* v. *Ayik,* 386 Mass. 721 (1982) (*Tosti I*), however, we altered this rule and held that unions will be considered "legal entities for the purpose of suing or being sued." *DiLuzio* v. *United Elec., Radio & Mach. Workers, Local 274,* 386 Mass. 314, 314 (1982). Nonetheless, both after retrial and after plaintiff's acceptance of the remittitur, judgment entered against "Members of Local 422, United Auto Workers." A review of the record makes clear the trial judge during retrial applied *DiLuzio,* recognizing that plaintiff's claims were being asserted against the union, and not against members of the union. Similarly, our treatment of the issue in *Tosti II, supra* at 482 n.1, 484 n.4, also indicates that the union itself is the appropriate defendant. Accordingly, we treat this as an action against Local 422 of the United Auto Workers. In light of the disposition of this case, the judgment entered against the members of Local 422 of the United Auto Workers should be vacated, and an appropriate judgment against the union local itself should be entered.

a master's conclusions as to the consequences to the plaintiff from his termination and where, in concluding that "the quality and standard of plaintiff's life was substantially affected by defendant's conduct," the master properly took into account that the "plaintiff lost his job, the benefits incident thereto, was forced to sell his home, and was unable to find comparable work." [228-229]

TORT. Writ in the Superior Court dated August 6, 1973.

Following review by the Supreme Judicial Court reported in 394 Mass. 482 (1985), a remittitur was ordered by *Thomas R. Morse, Jr., J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Gary R. Greenberg (Louis J. Scerra, Jr.,* with him) for United Auto Workers, Local 422.

*John J. C. Herlihy (Karen M. Thursby* with him) for the plaintiff.

O'CONNOR, J. The plaintiff, previously a foreman of General Motors Corporation (G.M.) in Framingham, commenced this action in 1973 to recover for libel and tortious interference with his employment relationship with G.M. The action arose out of an article in the defendant union's newspaper written by the defendant Henry Ayik. The article accused the plaintiff of engaging in union work in violation of the union's contract with G.M., and punching vehicle repair tickets indicating that work had been done although it had not been done. The plaintiff alleges that the article caused G.M. to fire him. The jury returned verdicts against Henry Ayik, Baheege Ayik, and the union. The defendants appealed, and this court reversed the judgments and ordered a new trial. *Tosti* v. *Ayik,* 386 Mass. 721 (1982) *(Tosti I).*

On retrial, the jury found for all the defendants on the plaintiff's claim of tortious interference with his employment relationship, and they found for the defendant Baheege Ayik on the libel claim. However, they found for the plaintiff against Henry Ayik in the sum of $5,000[2] and against the union in the

---

[2] Judgment was entered on that verdict.

sum of $495,000 on the libel claims. On the union's appeal, however, this court held that the verdict against the union was "clearly excessive and impermissibly reflected prejudicial or punitive considerations." *Tosti* v. *Ayik,* 394 Mass. 482, 499 (1985) (*Tosti II*). We remanded the case to the Superior Court to give the defendant an opportunity to move for a new trial on damages alone based on the excessiveness of the jury's assessment. We expressly recognized the plaintiff's right under Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974), "to remit such sum as the judge considers excessive" as an alternative to a new trial on damages. *Id.*

On remand, a special master was appointed to make a recommendation concerning an appropriate remittitur. The special master had been the trial judge at the second trial before resigning as a judge of the Superior Court. The special master recommended a remittitur to $275,000, and the Administrative Justice of the Superior Court adopted the recommendation. The plaintiff. accepted the remittitur. Judgment entered for the sum of $275,000, with interest thereon in the sum of $428.187.17, and the union appealed claiming that the reduced verdict was still excessive. We allowed the plaintiff's application for direct appellate review. We now affirm the judgment.

We observed in *Tosti II, supra* at 495, quoting from *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 861 (1975), that, in defamation cases against labor unions, concern for First Amendment rights and for Federal labor policy imposes on "both trial and appellate judges . . . a special duty of vigilance in charging juries and reviewing verdicts to see that damages are no more than compensatory." We emphasized that the plaintiff was entitled "only to fair compensation" for the losses that he had pleaded and proved. *Id.* at 496. We focused on the requirement that, for a loss to be recoverable, the fact finder must determine on the basis of adequate evidence that it was caused by the defendant's wrongful conduct. To illustrate that point, we discussed several decisions in other jurisdictions. *Id.* at 496-498. We noted that the plaintiffs in those cases were denied recovery for their alleged inability to obtain employment because the evidence was insufficient to

show that such inability was the result of the defendants' de-famatory statements. *Id.* at 497-498. See *Lawlor* v. *Gallagher Presidents' Report Inc.*, 394 F. Supp. 721 (S.D.N.Y. 1975); *Benassi* v. *Georgia-Pacific,* 62 Or. App. 698, modified, 63 Or. App. 672 (1983); *Lawrence* v. *Jewell Cos.*, 53 Wis. 2d 656 (1972).

Based primarily on our discussion of those cases, the defend-ant now argues that in *Tosti II* we announced that a plaintiff, whose employment is terminated as a result of the libellous statements of third parties, cannot recover for that loss without also proving that new employment was unavailable due to the libel having been published to prospective employers. The defendant misreads *Tosti II.* Such a rule would not merely limit a plaintiff to truly compensatory damages. Rather, it would deny him full compensation for the wrong done to him. It has never been our intention to adopt such a rule. In all the cases that we discussed in *Tosti II* to illustrate the necessity for a plaintiff to prove a causal relationship between a defend-ant's wrongful conduct and the plaintiff's claimed loss, there was no claim, as there is here, that the plaintiff was fired because of the defendant's defamatory statement. In each case, the only claim of loss was that the plaintiff could not market his services because his reputation among prospective purchas-ers had been wrongly damaged. That claim is not made here. The only claim in this case is that the union's libel caused the plaintiff to lose his job, which in turn had harmful conse-quences. The relevance of the out-of-State cases discussed in *Tosti II* is limited to the principle that a plaintiff must prove a causal connection between alleged wrongs and claimed losses.

We said in *Tosti II, supra* at 498, that "[w]hile in this case the jury could conclude from the evidence that the plaintiff lost employment due to the defendant's article, that finding does not necessarily entitle the plaintiff to all future wages he would have otherwise earned from G.M." That, of course, is true. A plaintiff, whose employment is terminated because of a third party's tortious conduct, must make a good faith effort to mitigate damages by seeking other comparable employment,

but, if that effort is made, the plaintiff is entitled to be compensated in an amount that reflects what he would have earned had his employment not been terminated. We turn, then, to the special master's memorandum explaining his recommended remittitur.

The special master arrived at the following conclusions on adequate evidence: The plaintiff was approximately forty-four years old when his employment was terminated; he had been employed at G.M. for twenty-three years and had a good employment record, having "worked his way up from an hourly wage position to the management position of foreman . . .; *while no evidence was presented that the libel was communicated to other potential employers,* no comparable work in terms of pay was seemingly available for a man of plaintiff's age, experience and skill within a reasonable area of his residence . . .; plaintiff has made good faith and continuing efforts to find comparable work since the date of his termination . . .; plaintiff lost $100,000 of the income he would have earned in base pay as a General Motors foreman as a result of defendant's conduct."[3]

In concluding that "a remittitur to the sum of $275,000 is appropriate and just," the special master considered the plaintiff's loss of benefits, such as hospital, medical and life insurance, and pension rights in addition to the $100,000 loss of income. He assigned *no specific monetary value to those losses* other than the loss of income. Indeed, there was no evidence of their monetary value. But, in concluding that "the quality and standard of plaintiff's life was substantially affected by defendant's conduct," the special master properly took into account that the "plaintiff lost his job, the benefits incident thereto, was forced to sell his home, and was unable to find comparable work." As the special master recognized, resulting personal humiliation and mental anguish are compensable even

---

[3] In *Tosti II,* we noted the plaintiff's testimony that, from the time of his discharge in 1971 until the second trial in 1983, the plaintiff's total earnings "were approximately $124,000 compared to the estimated $224,000 he would have earned in base pay as a G.M. foreman." *Id.* at 497.

though their translation into money damages is necessarily imprecise. *Stone* v. *Essex County Newspapers, Inc., supra* at 861.

In *Tosti II, supra* at 498, we characterized the evidence of harm to the plaintiff's reputation and mental suffering as "sparse indeed." Despite that characterization, however, we must acknowledge that the evidence did portray a man who, before being discharged by G.M., owned two homes that he had to sell as a result of the defendant's conduct, uprooting his family from an area in which they had lived their entire lives. Also, there was evidence that the plaintiff and his family were forced to relocate seven times to various rental properties, sell their furniture, and borrow money from relatives to survive, and there was evidence of a deterioration in the plaintiff's social life. We cannot fairly say that $275,000 more than compensates the plaintiff for the tortious wrong done to him. Accordingly, we affirm the judgment.

*So ordered.*