Defendant Stephanie Sullivan-McCaughey appeals from a judgment against her on tort and contract theories arising from her business relationship with the plaintiff, Thomas R. Olafsson. The appeal of her company, American Trust Real Estate, LLC (ATRE), challenges its inclusion in the judgment where the jury made no award against it. We affirm the judgment on Olafsson's breach of contract and misrepresentation counts against Sullivan-McCaughey. We reverse the judgment on Olafsson's claim of negligence against Sullivan-McCaughey. We also reverse the judgment on all counts against ATRE.
Background. In December, 2007, Olafsson, Sullivan-McCaughey, and Paul J. Mignone entered a written partnership agreement for the purpose of developing two parcels of residential real estate in Weston, known as 53 Shady Hill Road and 40 Radcliffe Road. Prior to formation of the partnership, Olafsson held title to both lots, and had begun some work on developing them. The partnership agreement stated:
"All capital to date to establish the position on both Shady Hill and Radcliffe projects have been provided by [Olafsson] or the Olafsson Realty Group, LLC [ORG]. It is agreed upon by all partners that no profits are to be distributed to any partner until the start up capital, both hard and soft costs, provided by [Olafsson] or ORG that have not been reimbursed by existing, past and present construction financing, have been in [sic ] paid in full."[4]
In April, 2008, Olafsson, Sullivan-McCaughey, and Mignone formed a Massachusetts limited liability company, called Elite Weston Builders, LLC (EWB).[5] All three principals were named as managers of EWB. Olafsson does not dispute Sullivan-McCaughey's representation that title to the Shady Hill and Radcliffe properties had been transferred to the partnership, and was thereafter transferred by the partnership to EWB.[6] Notwithstanding having formed EWB, the parties never dissolved their partnership. They also never adopted a written operating agreement. See G. L. c. 156C, § 2(9).
At some point, Sullivan-McCaughey began serving as project manager for the developments, either in her personal capacity or through her company, ATRE. The work did not go as well or as quickly as hoped. There were problems with the construction at Shady Hill, resulting in delays and unexpected costs. The source of those problems was hotly contested at trial, with Sullivan-McCaughey placing blame on a general contractor hired by Olafsson before she began managing the projects. Ultimately, the parcels were sold in 2008 -- with the Radcliffe land sold as a vacant lot with only excavation completed and the Shady Hill parcel sold with an unfinished structure.
In August, 2011, Olafsson sued Sullivan-McCaughey and Mignone on a variety of theories. Olafsson's claims against Sullivan-McCaughey proceeded to a jury trial in April, 2016.[7] Sullivan-McCaughey moved for directed verdict both at the close of Olafsson's case and again at the close of all evidence. After the jury verdict, she brought an emergency motion for reduction of damages and then filed four separate motions for judgment notwithstanding the verdict (n.o.v.).[8] The trial judge denied the emergency motion for reduction of damages. A different judge heard the motions for judgment notwithstanding the verdict and denied them.[9] This appeal followed.
Discussion. "A motion for judgment n.o.v. presents a 'pure question of law, specifically, whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." ' " Wodinsky v. Kettenbach, 86 Mass. App. Ct. 825, 833 (2015), quoting from Quinn v. Mar-Lees Seafood, LLC, 69 Mass. App. Ct. 688, 702 (2007). "The evidence is reviewed in the light most favorable to the plaintiff, 'without weighing the credibility of the witnesses or otherwise considering the weight of the evidence.' " Wodinsky, 86 Mass. App. Ct. at 833, quoting from Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 94 n.5 (1978). "Relief is appropriate under a motion for judgment n.o.v. '[o]nly when no rational view of the evidence warrants a finding [for the nonmoving party]....' " Quarterman v. Springfield, 91 Mass. App. Ct. 254, 257-258 (2017), quoting from Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983).
1. Breach of contract. Olafsson prevailed on three out of four of his contract theories, with the jury's combined award on that count totaling $87,216.66. On appeal, Sullivan-McCaughey argues that her motion for judgment n.o.v. should have been allowed because the partnership agreement became a nullity by operation of the limited liability statute, G. L. c. 156C, once the parties formed EWB. Thus, she claims, there was no enforceable contract among the parties and she was entitled to judgment on Olafsson's contract claim as a matter of law.
As a threshold matter, Sullivan-McCaughey's argument was not adequately preserved for two reasons. First, it was not included in her directed verdict motion.[10] See Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 34 (1991), citing Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). Second, far from arguing that this issue was controlled by the statute, Sullivan-McCaughey repeatedly sought a jury instruction on this issue, treating the question as a factual inquiry regarding the parties' intent rather than a legal issue based on operation of a statute.[11] Sullivan-McCaughey could not actively seek to put the issue before the jury only to later claim it was a question of law outside the jury's purview.[12]
We need not rest on waiver, however, because Sullivan-McCaughey's theory fails on the merits. We see no basis for declaring the partnership agreement to be a nullity simply because the parties subsequently formed a limited liability company. This is especially so where no operating agreement was adopted. The meager authority Sullivan-McCaughey cites does not support her proposition and, in any event, is not binding on this court.
Sullivan-McCaughey also argues that Olafsson waived his contract claims by signing two documents purporting to set forth all amounts he was owed after the sale of the subject land. The jury were instructed on the law of waiver and modification, however, and apparently rejected Sullivan-McCaughey's waiver defense -- as to which she had the burden of proof.[13] And, to the extent Sullivan-McCaughey now claims that waiver is a legal question in the instant circumstances, she waived that argument by allowing it to be put to the jury without objection.[14]
Finally, Sullivan-McCaughey argues that Olafsson should have brought his breach of contract claim against EWB because it was EWB -- and not Sullivan-McCaughey -- who had an obligation to make payments to him. This argument is unavailing for three reasons. First, there was no showing that Olafsson had a contract with EWB -- the partnership agreement was among Olafsson, Sullivan-McCaughey, and Mignone. Second, all parties, including Sullivan-McCaughey, agreed that distributions from the closing on the Radcliffe property would be made directly to the parties by an attorney who received the funds, and would not pass through EWB. Third, Olafsson's claims as to improperly written checks, commissions, and/or deposit money do not implicate any payment that could have been made to him by EWB.
2. Misrepresentation. Sullivan-McCaughey argues that she was entitled to judgment on Olafsson's misrepresentation claim because Olafsson failed to present any evidence of a false statement on which he reasonably relied. See ZVI Constr. Co. v. Levy, 90 Mass. App. Ct. 412, 423 n.14 (2016). Ordinarily, "false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable." Yerid v. Mason, 341 Mass. 527, 530 (1960). See Stolzoff v. Waste Systems Intl., Inc., 58 Mass. App. Ct. 747, 759 (2003). But false statements of future intent are actionable as fraud if a jury can find "the statements misrepresent the actual intention of the speaker and were relied on by the recipient to his damage." McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 709 (1990).
Accordingly, the jury were instructed that they could return a verdict for Olafsson only if Sullivan-McCaughey "intentionally misrepresented her intention and Mr. Mignone's intention" in entering the partnership agreement, or knew that her promise to repay start-up costs to Olafsson was false and "intended not to perform that statement." Here, the jury could have determined based on the entirety of the circumstances and the combination of facts presented to them about the course of dealings between Sullivan-McCaughey and Olafsson that Sullivan-McCaughey's promissory statement was false when made.[15]
Sullivan-McCaughey also argues briefly that Olafsson did not prove damages arising from any misrepresentation. There was, however, evidence before the jury that could have supported their award of $16,000 in damages, based either on a draw of $16,000 taken by Sullivan-McCaughey, or based on disbursements of $8,000 each to Sullivan-McCaughey and Mignone.
Finally, Sullivan-McCaughey argues that Olafsson did not rely on any false statement by transferring the properties to EWB because they passed through the partnership first. This argument is unavailing, since Sullivan-McCaughey does not deny that Olafsson's consent to that transfer was required nor does she contend that his consent was not, in fact, given.
3. Negligence. As to Olafsson's negligence claim,[16] Sullivan-McCaughey argues a total failure of evidence on both her duty of care as a project manager and the manner of alleged breach. Here, Olafsson demonstrated that there were cost overruns and that the stairs had to be rebuilt repeatedly. Olafsson, however, provided no evidence from which a jury could determine whether this was a result of any breach of duty by Sullivan-McCaughey or even whether rebuilding was unnecessary or the fault of Sullivan-McCaughey. Without an exploration of the circumstances surrounding the rebuilding or expert testimony regarding the necessity of the rebuilding, there was no basis for the jury to find negligence. Cf. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 403 (2003) ("Only where professional negligence is so gross or obvious that jurors can rely on their common knowledge to recognize or infer negligence may the case be made without expert testimony"); Atlas Track Corp. v. Donabed, 47 Mass. App. Ct. 221, 226-227 (1999), quoting from Pongonis v. Saab, 396 Mass. 1005 (1985) (expert testimony required to prove standard of care of a reasonable engineer where the allegations "did not involve conduct that was 'so gross or obvious that laymen [could have relied upon] their common knowledge to recognize or infer ... negligence' "). Accordingly, the judgment on Olafsson's negligence claim is reversed.[17]
4. Joint and several liability of ATRE. Finally, ATRE argues that judgment should not have entered against it in this case. We agree. The only mention of ATRE in the special questions put to the jury is found in the contract section, in which the jury were asked whether Sullivan-McCaughey breached her contract with Olafsson by "causing real estate commissions to be paid to [ATRE]." The jury's answer to that question established only Sullivan-McCaughey's liability, not ATRE's. Moreover, there was no evidence submitted in the case as to any contract between Olafsson and ATRE, except insofar as Sullivan-McCaughey contended that ATRE (and not she) served as the project manager for the Shady Hill and Radcliffe developments. Accordingly, because the jury did not find ATRE liable on any count, the judgment against ATRE is reversed.
So much of the judgment as held defendant Sullivan-McCaughey liable for negligence is reversed. So much of the judgment as held American Trust Real Estate, LLC, liable is reversed. The judgment is otherwise affirmed, and the order dated December 13, 2016, denying the defendants' postjudgment motions is otherwise affirmed.
So ordered.
reversed in part; affirmed in part.

In his complaint, Olafsson named himself as plaintiff "individually and as Manager of Olafsson Realty Group, LLC." We observe that a Massachusetts limited liability company can sue and be sued in its own name, see G. L. c. 156C, § 55. The trial judge treated ORG as a named party in the special verdict questions presented to the jury. We also treat ORG as a named plaintiff for purposes of the judgment and for purposes of this appeal. We note, however, Sullivan-McCaughey's uncontested representation that ORG was administratively dissolved on April 29, 2011.

In his complaint, Olafsson named Sullivan-McCaughey "individually and as Manager of Elite Weston Builders, LLC," and also named EWB separately as a party. It appears from the trial court's docket sheet that EWB was served with process. Sullivan-McCaughey purported to answer the complaint "in all named capacities," but the signature block on her answer does not indicate that her counsel intended to appear on behalf of EWB. The trial court's docket sheet also does not indicate an appearance by any counsel on behalf of EWB. The judgment does not appear to have been entered against EWB, although it lists Sullivan-McCaughey in her capacity as manager of EWB, consistent with the caption used by Olafsson. The trial judge did not treat EWB as a party in the special verdict questions, and did not ask the jury any questions about EWB. No party has moved for entry of default or a default judgment against EWB. Accordingly, EWB's status in relation to the litigation is unclear, but to the extent Olafsson intended to pursue claims against EWB it appears those claims were not prosecuted.

The deeds are not in the record before us.

Sullivan-McCaughey represents in her brief that Mignone did not participate in the trial because he had received a discharge in bankruptcy.

In the alternative, all four motions sought a new trial or remittitur. Having reviewed the record thoroughly, we affirm the denial of Sullivan-McCaughey's alternative requests for a new trial or remittitur.

Because the trial judge had retired, the regional administrative justice assigned the motions for judgment n.o.v. to a different judge.

The judge denied the directed verdict motion as to breach of contract and fraud at the close of Olafsson's case. At the close of all evidence, Sullivan-McCaughey renewed her directed verdict motion. The judge's response was simply, "same ruling."

Eventually, after several requests, the trial judge gave the jury a supplemental instruction stating, "[t]he Defendant also claims that by entering into the LLC, the parties intended that the partnership agreement, to the extent that it existed, was no longer in operation.... [A]gain, it's for you to determine what was the intention of the parties, as with every single step of this, in terms of determining whether there was a contract, what the terms of the contract was, whether it was modified or not modified, whether it was waived or not waived; those are all questions that you must determine as a matter of fact ...."

At various times, the judge suggested that this issue could be dealt with in posttrial motions, expressing a willingness to instruct the jurors while also stating, "I think that's a question of law though." The fact that the judge may have invited posttrial motions on the subject did not, however, prevent a waiver. It was up to Sullivan-McCaughey's counsel to decide how to proceed, and he insisted on giving the question to the jury notwithstanding the judge's suggestion that it was likely a question of law.

Sullivan-McCaughey did not seek a special verdict question with respect to waiver or modification.

We note there were no pretrial dispositive motions filed in this case.

We note that Sullivan-McCaughey has not argued that tort liability cannot arise where the parties' dealings have been reduced to a contract and the allegedly false-when-made promise is entirely co-extensive with an enforceable contract term. We do not reach the question, and our only task is to determine whether any evidence in the record supported the jury's affirmative answer to the question that was posed to them.

Although she hints at it in her brief, Sullivan-McCaughey does not explicitly argue that Olafsson lacked standing to bring his negligence claim because EWB and not Olafsson was the party contracting with Sullivan-McCaughey and/or ATRE to perform project management services. Because we reverse on another ground, we need not consider the issue.

Sullivan-McCaughey also argues that Olafsson's negligence claim was barred by the economic loss rule. See Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993). Sullivan-McCaughey did not object, however, to a special verdict form that expressly invited the jury to award on the negligence claim damages that were plainly economic in nature -- i.e., "extra costs that were deducted from plaintiff's share of the proceeds for the sale of Shady Hill." Accordingly, she likely waived her economic loss rule argument, but we need not decide the point since we reverse on another ground. We note, however, that the economic loss rule "was developed in part to prevent the progression of tort concepts from undermining contract expectations." Wyman v. Ayer Properties, LLC, 469 Mass. 64, 70 (2014). We note further that neither party has briefed the threshold question whether a contract between a project owner and its project manager gives rise to a tort claim based on poor performance by the manager. We take the issues as they have been framed by the parties.